ECHO, INC. *v.* Demetria STAFFORD

CA 86-498 730 S.W.2d 913

Court of Appeals of Arkansas
Division II
Opinion delivered June 10, 1987

*Meeks, Fox & Carter, P.A.*, by: *Tim Fox*, for appellant.

*G. Christopher Walthall*, for appellee.

JOHN E. JENNINGS, Judge. Gaston Lanata and his wife owned a home in Malvern, Arkansas. On March 29, 1982, the Lanatas signed an offer and acceptance agreeing to sell the property to Tommy Stafford and his wife, Demetria. The contract provided that the Lanatas would receive the Staffords' home in trade, valued at $70,000.00, and the Staffords would assume Lanata's existing mortgage at First Federal of Malvern in the amount of $40,000.00. On April 16, 1982, the Lanatas and the Staffords entered into a printed form "Purchaser's Agreement." This agreement was in the form of a contract for deed. It provided for a total purchase price of $110,000.00, and Lanata acknowledged the receipt of $70,000.00 cash. On the back of the "Purchaser's Agreement" there was a promissory note from the Staffords to the Lanatas for $40,000.00, payable at $368.30 per month. This was precisely the amount of the monthly payment on Lanata's mortgage. Although the contract did not so provide, the deed was executed and placed in escrow.

The Staffords never paid the Lanatas on the note; instead, they made the payments on Lanata's mortgage at First Federal.

It appears that the reason the mortgage was not assumed was that it contained a due on sale clause. It is clear that First Federal subsequently learned of the sale by Lanata and declined to enforce the due on sale clause.

On April 22, 1983, appellant, Echo, Inc., obtained a judgment of $530,000.00 against Gaston Lanata. The judgment was registered in Hot Spring County, Arkansas on September 1, 1983.

Demetria Stafford and her husband divorced and she received a quitclaim deed to the property. On January 19, 1985, Echo sued Demetria Stafford, seeking to foreclose its judgment lien. The house on the property burned to the ground on March 22, 1985.

The "Purchaser's Agreement" contained a printed provision requiring the buyer to maintain $80,000.00 in fire insurance with the proceeds payable to the seller, Lanata. The Staffords had insured the property for $81,000.00, but the policy named the mortgagee, First Federal, as the loss payee. After the house burned, First Federal's mortgage, then $38,000.00, was satisfied from the insurance proceeds and the balance of $43,000.00 was tendered by the insurance company into the registry of the court. On January 14, 1986, Echo amended its complaint seeking the entire $80,000.00 in insurance proceeds, or in the alternative, to require Demetria Stafford to pay the $40,000.00 note executed to the Lanatas, to it.

The chancellor held that Echo had no interest in the land and no interest in the insurance proceeds, and that Demetria Stafford owed nothing to Lanata. On appeal, Echo raises a number of issues. We affirm the chancellor's decision.

■ At trial the court permitted the title insurance agent who closed the transaction between the Lanatas and the Staffords to testify that after closing the Lanatas had no other monies coming to them; permitted Mrs. Stafford to testify that after closing she owed the Lanatas nothing; and admitted the offer and acceptance into evidence. Appellant claims that the parol evidence rule was thereby violated. However, the parol evidence rule does not apply in a dispute between a party to the contract and a stranger. *Worcester Felt Pad Corporation* v. *Tucson Airport*

*Authority,* 233 F.2d 44 (9th Cir. 1956); *Kassianov* v. *Raissis,* 200 Cal. App. 2d 573, 19 Cal. Rptr. 614 (1962).

 Echo argues that Demetria Stafford's statement was a "legal conclusion." We believe that the testimony was admissible under A.R.E. Rule 701, as it was rationally based on the perception of the witness and was helpful to the determination of a fact in issue.

 Appellant argues that, because the purchaser's agreement required the Staffords to maintain $80,000.00 in insurance payable to the Lanatas, it is entitled to judgment against Mrs. Stafford of $80,000.00. We disagree. A judgment lien is subject to all other existing liens which are valid as to the landowner, because the judgment lien does not attach to the land but only to the judgment debtor's interest therein. *Alston* v. *Bitely,* 252 Ark. 79, 477 S.W.2d 446 (1972). Judgment creditors are not innocent purchasers and the judgment lien is subject to every equity which exists against the land at the time it comes into existence. *First National Bank* v. *Meriwether Sand & Gravel Co., Inc.,* 188 Ark. 642, 67 S.W.2d 599 (1934). The existing equities need not be of record and lack of notice to the judgment creditor is immaterial. *See Snow Brothers Hardware Co.* v. *Ellis,* 180 Ark. 238, 21 S.W.2d 162 (1929). Before Echo obtained its judgment against Lanata, Lanata had sold the property in question to the Staffords. The fact that the contract was unrecorded is immaterial. As Lanata retained no interest in the land, there was nothing to which Echo's judgment lien might attach.

 Even if Echo were correct that it had some sort of lien against the property, it would not follow that it had a lien against the insurance proceeds. The amount collected on a fire insurance policy by an insured does not, in any sense, constitute proceeds of the property, and the coverage is personal to the insured and is for his benefit only. *Page* v. *Scott,* 263 Ark. 684, 567 S.W.2d 101 (1978). The result here is not changed by the clause in the purchaser's agreement by which the Staffords agreed to take out $80,000.00 in fire insurance payable to Lanata. The true agreement was shown to be that Lanata had no further interest in the property and that the insurance policy was to name First Federal as a loss payee. This is what was done. In effect, Echo seeks to enforce a contractual provision which its own judgment debtor

could not have enforced. This it may not do.

■ Appellant next argues that it is entitled to an $80,000.00 judgment against Mrs. Stafford because of the "doctrine of appropriation in advance," citing *Fireman's Fund Insurance Company* v. *Rogers,* 18 Ark. App. 142, 712 S.W.2d 311 (1986). This "doctrine" simply means that when a mortgagee is named as loss payee in its mortgagor's insurance policy, and a loss occurs, the mortgagee is entitled to enough of the proceeds to satisfy the mortgage indebtedness. The concept is inapplicable to the facts of this case.

■ Appellant also argues, in the alternative, that the court should have awarded it judgment against Mrs. Stafford on the $40,000.00 note to Lanata. It was clearly shown at trial, however, that the parties never intended that the note be paid; the note was merely to evidence the Staffords' assumption of Lanata's mortgage to First Federal. It is a familiar equitable principle that the form of a transaction will never preclude inquiry into its real nature and that the intention of the parties must govern, irrespective of the form. *Schnitt* v. *McKellar,* 244 Ark. 377, 427 S.W.2d 202 (1968). If Lanata cannot enforce the note, certainly his judgment creditor cannot.

■ Finally, appellant argues that Demetria Stafford has "unclean hands" because she attempted to avoid the due on sale clause in Lanata's mortgage to First Federal, and that therefore it is entitled to an $80,000.00 judgment against her. The doctrine of unclean hands is an equitable defense. It may constitute a basis, in equity, for a denial of relief. It is not a tort; it will not form the basis of a cause of action.

The trial court was correct in dismissing the appellant's complaint.

Affirmed.

MAYFIELD and COULSON, JJ., agree.